UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICKY CARTER,                    :    **CIVIL NO. 4:07-CV-2257**
                                 :
            Plaintiff            :    (Judge McClure)
                                 :
        v.                       :    (Magistrate Judge Smyser)
                                 :
MICHAEL J. ASTRUE,               :
Commissioner of                  :
Social Security,                 :
                                 :
            Defendant            :


**<u>REPORT AND RECOMMENDATION</u>**


The plaintiff has brought this civil action under the

authority of 42 U.S.C. § 405(g) to obtain judicial review of

the decision of the Commissioner of Social Security denying the

claim of the plaintiff for Social Security disability insurance

benefits.


On April 22, 2005, the plaintiff, Ricky Carter, applied

for disability insurance benefits.  He claimed that he became

disabled on July 1, 2004, as the result of diabetes,

1

hypertension, asthma, chronic obstructive pulmonary disease, gout, obesity and chronic kidney disease.

The claim was denied initially and on reconsideration. The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on February 21, 2007.  (Tr. 26-51).

At this hearing the plaintiff and a vocational witness testified.

The plaintiff, Ricky Carter, Jr., born November 27, 1977, stated in testimony (Tr. 30-43) that he is 73" tall and weighs 382 pounds.  He has gained about 100 pounds during the past year.  He is married, with three children.  He completed the tenth grade, has no GED, no military service and no vocational training except for some high school vo-tech and a body piercing apprenticeship.  His only work effort since July 1, 2004 was body piercing.  He made $500 in 2006 doing this form of work.  It did not work out because he had problems with fatigue and exhaustion.

Prior to July of 2004 he worked for about three years on a veal farm.  Prior to the veal farm he "worked at Paper Magic a couple of times" where he "pulled orders."  He worked at a meat packaging company, running a meat cutting saw.  He also stacked stones for about a year.

He had not applied for unemployment compensation benefits or for workers compensation benefits.  He has a driver's license, and drives about ten miles a week.

He uses insulin.  He has been hospitalized, for his high blood sugar, most recently in 2002 when his diabetes was diagnosed.  He has his diabetes under pretty good control now. He has not had any surgeries, and none is recommended for him.

He can care for his personal needs.  His eyesight and his hearing are alright.  He can pick up and carry a ten pound basket of laundry, and can raise his hands above his head.  He lives with six or seven other persons.  He goes up and down the stairs only once or twice a week.

His wife works, at an elderly care facility.

He denies smoking and denies drinking very often.  He makes meals, does laundry, vacuums, and he watches television. He watches television for six or seven hours a day.  He watches the children in the house for about an hour a day.

He stated that his greatest problem, that which most prevents him from working, is exhaustion.  Secondly, his gout attacks can put him off his feet for a couple of weeks.

He described his work on the veal farm.  He mixed feed, filled the cows' buckets, assisted in medicating the cows and performed other similar tasks.

His medications include Advair for his asthma, Byetta for weight loss, insulin for diabetes, a prescription fish oil pill to lower triglycerides, Lopid for high cholesterol, Lisinopril for high blood pressure, a medication for excessive body fluid, a sugar pill (Actos) to help his body use insulin,

Allopurinal for gout, Lasix for retaining fluid and Atenolol, a medication to prevent kidney damage from diabetes.

The plaintiff stated in testimony that gout attacks cause his feet and ankles to swell and that he can put no pressure on his feet or ankles.

He stated that he can sit for an hour or two, stand for a half hour, and walk about 100 yards.  He gets out of breath. Working on the veal farm, he was rendered unable to breathe at times, and this problem was aggravated by the presence in the air of dust from the powdered feed for the animals.  He states that his major problem is probably his asthma, and that his asthma makes him exhausted.

Marianne Starosta, the vocational witness, testified (Tr. 44-50) that the plaintiff's veal farm work was medium work exertionally, and was unskilled.  When he worked at Taylor Packing as a meat cutter, he performed light to medium work. His brief work at Paper Magic as an order puller was light work.

5

If he can lift and carry twenty pounds occasionally, ten pounds frequently, stand and walk for two hours a day, sit for six hours a day, and would be doing a job not involving certain specified motions (i.e., crawling) or exposures (i.e., high temperatures), he could work as an order puller but could not do any other past work, the vocational witness stated.  The vocational witness identified other jobs that fit these conditions and limitations as well.  She stated that if he were to miss three to four days of work a month, he would not be employable.

On March 15, 2007, the ALJ issued his decision denying the application of the plaintiff for benefits.  (Tr. 12-18). The Appeals Council denied the plaintiff's request for review (Tr. 4-6), making the ALJ's decision the final decision of the Commissioner.

The plaintiff filed his complaint with this court on December 13, 2007. The defendant filed an answer to the complaint and a copy of the administrative record on March 5, 2008.  Pursuant to Local Rules 83.40.4 and 83.40.5 the

plaintiff filed his brief on April 18, 2008 and the defendant filed his brief on May 23, 2008. No reply brief has been filed.

If the Commissioner's decision is supported by substantial evidence it must be affirmed. 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995). Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported

by substantial evidence." *Consolo v. Federal Maritime Comm'n*,
383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision
under the substantial evidence standard, the Commissioner's
decision must be accompanied by "a clear and satisfactory
explication of the basis on which it rests." *Cotter v. Harris*,
642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence
must be resolved and the Commissioner must indicate which
evidence was accepted, which evidence was rejected, and the
reasons for rejecting certain evidence. *Id*. at 706-707.  In
determining if the Commissioner's decision is supported by
substantial evidence the court must scrutinize the record as a
whole.  *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a
five-step process to determine if a claimant is disabled.  The
Commissioner must sequentially determine: (1) whether the
claimant is engaged in substantial gainful activity; (2)
whether the claimant has a severe impairment; (3) whether the
claimant's impairment meets or equals a listed impairment; (4)

8

whether the claimant's impairment prevents the claimant from doing past relevant work; and, (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he is unable to engage in his past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

In this case the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that he has impairments that are severe (diabetes, hypertension, asthma, chronic obstructive pulmonary disease, gout, obesity and chronic kidney disease), that his impairments alone or in combination do not meet or equal any listed impairments, and that he is not able to perform his past

relevant work.   The ALJ further determined that the plaintiff

has the residual functional capacity[1] to perform a limited

range of light work activity.


On the basis of these findings, the ALJ found the

plaintiff not to be disabled.


The plaintiff argues that the ALJ erred in not giving

adequate significance and weight to the treating source opinion

of Dr. John Weis.   Secondly, he argues, the ALJ erred in not

considering the treating source opinion of Dr. Michael Lavin,

and that a remand is accordingly appropriate so that Dr.

Lavin's opinion can be considered.


Addressing the first argument, the plaintiff's argument

is essentially that the ALJ substituted his own opinion for

that of a treating medical professional.

---

1.  "Residual Functional Capacity" is "that which an individual is still able
to do despite the limitations caused by his or her impairment(s)."   *Burnett v.
Commissioner of Social Security Adm.,* 220 F.3d 112, 121 (3d Cir. 2000) (quoting
*Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)).

This is a case in which the ALJ rejected a treating physician's opinion, that of Dr. Weis, without a medical expert's opinion supporting the ALJ's medical conclusions. There is not a physician's or medical expert's opinion in the record that contradicts findings and opinions stated by Dr. Weis.  Thus, the ALJ rejected Dr. Weis' opinion on the basis of the ALJ's own medical expertise.  The Commissioner then, on appeal,  presents medical evaluative and opinion arguments to this court, implicitly asking the court to be the fact finder and to make medical determinations based upon the court's own evaluation of the nature of the plaintiff's treatments, hospitalizations, doctors' visits and medications; i.e.,  "This is not the medical profile of a chronically disabled individual." (Doc. 9, p. 12).  It is, however, not the role of the court to be the fact finder; rather, the court's task is to determine whether the Commissioner's decision is supported by evidence.

The ALJ may not reject the opinion of a treating physician unless the ALJ can point to substantial medical evidence that supports an opposite view.  *Rossi v. Califano,*

11

602 F.2d 55 (3d Cir. 1979).  To say that "this is not the medical profile of a chronically disabled person" is not to say that, in the medical opinion of a medical expert, the plaintiff has a particular functional capacity.[2]

The report of a non-examining physician is generally entitled to little weight, *Smith v. Schweiker,* 671 F.2d 789, 792-93 (3d Cir. 1982); however, Dr. Weis was a treating and examining physician of long standing.  The Commissioner is habitually suspicious of the neutrality and of the critical detachment of treating physicians' opinions, but has not implemented any practices or policies to incorporate his generalized suspicion into his regulations.  The courts have never accepted the Commissioner's generalized suspicion as a principle upon which reliable fact finding can be based.  In this case, the ALJ would need to evaluate the attitude(s) of Dr. Weis relating to his evaluation of his patient's residual functional capacity with a broad range of factors and considerations in mind before it could reasonably be concluded

---

2.  The Commissioner's regulations do not use the "medical profile of a chronically disabled person" standard, but rather use the five step process set forth above.

that Dr. Weis did not actually consider his patient, Ricky Carter, to be unable to perform substantial gainful activity due to his physical and mental condition, or that Dr. Weis was mistaken in his understanding of the evaluation that he was making.  Instead, the ALJ summarily decided that he could not "assign significant weight" to the treating physician's opinion.  A treating physician's opinion can not reasonably be summarily rejected.  The ALJ should either ask more questions of the treating physician or should obtain medical expertise from other sources.

The Commissioner can not reasonably ask the court to accept as the core reason for the denial of plaintiff's application for benefits that "the claimant's medically determinable impairments could reasonably be expected to produce some symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. 16).  This outcome determinative finding is largely unexplained.

13

The Commissioner criticizes Dr. Weis' form report, citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993). That decision was critical of form reports when there is no narrative discussion and has not been an examination of the patient or subject.  That is not the case here; Dr. Weis was a regularly examining, treating, family physician.

The second criticism by the Commissioner of Dr. Weis' opinion is that it incorporates a vocational issue in that in stating that the plaintiff is "disabled" it  addresses the medical-vocational issue of disability.  We have often seen ALJs favorably cite and give weight to a doctor's opinion that a person the doctor is reporting about is "not disabled."  The Commissioner must develop a uniform position as to this issue. We understand the doctor here to be saying that the plaintiff does not have the residual functional capacity for any level of substantial gainful activity.

The defendant argues that a report prepared by a doctor for a state agency is not dispositive.  The plaintiff is not claiming that Dr. Weis' report is dispositive, only that it is

14

relevant and supports inferences.  The ALJ, without any
apparent meritorious reason, found that it is of no probative
value.

     The defendant asserts that Dr. Weis' opinion is not
supported by the medical evidence of record.  However, the
defendant presented no contrary medical expert evidence to the
ALJ.  The defendant repeats the assertions that the plaintiff's
diabetes has been "under relatively good control" and that his
"overall physical examinations remained essentially normal,"
but these generalizations are invitations to the court to find
the facts.  But the court is to review the evidentiary support
for the Commissioner's findings, not to make factual findings.

     This is a case in which the plaintiff has severe
impairments and can not perform past relevant work.  The ALJ
found there to be a severe combination of seven impairments.
(Tr. 14).

     The burden shifted to the Commissioner to establish by
evidence that the plaintiff retains a physical capacity to

work.  In order to conclude that the Commissioner did so, the
court must be satisfied that the ALJ's rejection of certain
parts of Dr. Weis' reports and the ALJ's rejection of some
portions of the plaintiff's credibility satisfies the
requirement of an evidence-based adjudication.

        Upon analysis, the Commissioner's position asks the
court to accept that the ALJ knows when a severely obese
diabetic man with gout, chronic pulmonary obstructive disease,
chronic kidney disease, asthma and hypertension is disabled and
when he is not, and that a decision based upon the ALJ's
medical knowledge and not upon evidence in the record is a
decision supported by evidence.  Apart from the ALJ's own
medical assessment, which may well be sound but it is not
evidence and is not reviewable, all that is presented here is
that the ALJ got to Step 4 of the sequential process, from
there leapt past the requirement of an evidence-based decision
and instead justified a denial of the application with two
generalizations: (1.) that Dr. Weis' opinion goes beyond the
doctor's expertise; and (2.) that the plaintiff is not
credible.

The ALJ found that the plaintiff has the functional capacity to perform past work that he performed as a packager or order puller. (Tr. 16). This finding is not supported by evidence. The vocational witness did not say that the plaintiff can do the work of a packager that he did. (Tr. 48). As for his work as an "order puller," the extent of such work performed by the plaintiff was to have "worked at Paper Magic a couple of times." (Tr. 33). The record was not developed to establish that the plaintiff had past relevant work as an order puller or to adequately establish the nature of that work. The Commissioner's brief does not assert that this is a case where there was a finding supported by substantial evidence that the plaintiff can perform his past relevant work. The plaintiff's past relevant work was substantially that of a farm laborer. This adjudication was based upon a residual functional capacity finding by the ALJ and upon the vocational witness testimony, i.e., not upon a finding that the plaintiff had not established that he could not perform past relevant work.

The plaintiff testified that he can walk for 100 yards. He can stand for a half hour. The ALJ found that he can stand

17

and walk for up to two hours in an eight hour day.  The ALJ
does not say how he inferred that the plaintiff can stand and
walk for two hours a day, in apparent contrast to what the
plaintiff had said he can do, except for the ALJ's very
generalized explanation that the plaintiff, to the extent that
anything that he said is not consistent with the ALJ's
findings, is not credible.  The ALJ did not cite any
evidentiary source at all for rejecting the plaintiff's
evidence.  A generalized finding that a claimant is not
credible as to anything explicitly or implicitly stated by the
claimant that is inconsistent with the Commissioner's decision
does not seem to be a finding that is based upon evidence, not
even more than a scintilla of evidence.

     The second argument of the plaintiff is that the
psychiatric reports and opinions of Dr. Michael Lavin should
have been considered.  These reports and opinions were
submitted by the plaintiff to the Appeals Council after the
ALJ's Decision was published.  The Appeals Council "found that
this information does not provide a basis for changing the
Administrative Law Judge's decision." (Tr. 5).  Dr. Lavin's

18

reports and opinions (Tr. 241-245) noted depression, anxiety, irritability, poor coping skills, and an Axis V rating of 50. In that this case should be remanded and reconsidered by the Commissioner, the Commissioner will have an opportunity to reconsider whether a consideration of the reports and opinions of Dr. Lavin will assist the Commissioner in determining the ability of the plaintiff to perform substantial gainful activity.  The Commissioner has forcefully argued that there was not good cause for the plaintiff to have submitted Dr. Lavin's reports and opinions to the ALJ, and the court would be justified under the cases cited by the Commissioner in refusing a remand on the basis of these reports and opinions if that were the sole reason presented for a remand.  The court should not in the absence of good cause undermine the Commissioner's sound interest in finality.  The Commissioner does not assert that he would not have discretion to consider other medical evidence upon remand, and if this Recommendation is adopted the Commissioner must consider some additional medical evidence on remand.  The Commissioner should exercise discretion as to whether to consider Dr. Lavin's medical (mental health) reports and opinions.

The ALJ decided this case in favor of the defendant, as already stated herein, without medical evidence that supports an inference that the plaintiff has a residual functional capacity such as the ALJ finds him to have, at Tr. 14.  The ALJ cites as support for his residual functional capacity finding "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. . ." (Tr. 14).  But, reading on in the ALJ"S Decision, after the plaintiff's symptoms and Dr. Weis' opinion are rejected, no medical evidence is presented in support of the ALJ's findings.

The case should accordingly be remanded to the Commissioner for further consideration of additional evidence that will permit the Commissioner to make findings that are based upon evidence.  It is recommended that the case be remanded to the Commissioner.

                                        /s/ J. Andrew Smyser
                                        J. Andrew Smyser
                                        Magistrate Judge
Dated:   June 20, 2008.